**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**WHITNEY GIBB,**

      **Plaintiff,**

                                      **Case No.: 6:26-cv-00041**

**v.**

**LENSAR, INC.,**

      **Defendant.**
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COMES NOW Plaintiff Whitney Gibb ("Gibb" or "Plaintiff"), by and through undersigned counsel, and brings this Complaint and Demand for Jury Trial against Lensar, Inc. ("the Corporation" or "Defendant"), and states as follows:

**PARTIES**

1.      Plaintiff is an individual 18 years of age or older and is thus *sui juris*.

2.      Gibb currently resides in Nashville, Tennessee, and did at all times relevant to the allegations herein reside in Nashville, Tennessee.

3.      The Corporation's is a Florida For-Profit Corporation with its principal place of business at 2800 Discovery Dr. Suite 100, Orlando, Florida 32826, which is in Orange County, Florida.

4.      The Corporation's central operations are conducted out of its Orlando office, with human resources and the majority of the management/C-Suite-level employees performing leadership functions at that location.

Page **1** of **16**

5.      Gibb worked remotely for the Corporation.

6.      The events or transactions out of which this claim arose occurred in Orange County, Florida.

## JURISDICTION AND VENUE

7.      This is an action under Florida state law, including the Florida Civil Rights Act of 1992 ("the FCRA")[1] and the Florida Whistle-Blower's Act ("the Act").[2]

8.      There is complete diversity of Parties, in that Gibb is a citizen of the state of Tennessee, while the Corporation is a citizen of the state of Florida.

9.      There is at least $75,000 in controversy, exclusive of attorneys' fees, costs, and interest.

10.     Therefore, this Court has diversity jurisdiction over these claims pursuant to 28 U.S.C. § 1332.

11.     Venue is proper in the United States District Court, Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2) as the events or transactions out of which this claim arose occurred in Orange County, which is located within the Middle District of Florida.

12.     Thus, the Orlando Division is the proper division.  M.D. Fla. Loc. R. 1.04(a).

---

[1] Fla. Stat. § 760.01 *et seq.*
[2] Fla. Stat. § 448.101 *et seq.*

**GENERAL ALLEGATIONS**

13.     Gibb was employed by the Corporation for approximately three years, but she voluntarily left her work for the Corporation to work for another entity.

14.     Gibb's work with the other entity ended as a result of the COVID-19 pandemic, and, soon thereafter decided to see if there was an opportunity for her to return to the Corporation.

15.     Gibb returned to her work with the Corporation as a practice education specialist on or about August 14, 2023; however, unlike her first round of employment with the Corporation, the territory she was responsible for was about quadruple the size of her prior territory.

16.     Despite the increase in territory size, Gibb had performed her job duties with the Corporation well and had not received any negative reviews prior to the events described below.

17.     Gibb's direct supervisor was Cathy Davlin ("Davlin"), even though Davlin was in the same role and had the same title as Gibb.

18.     Davlin's supervisor was Lauren Gyoerkoe ("Mrs. Gyoerkoe").

19.     On or about March 2024, Gibb received an email requesting a response by 5pm that day.

20.     Gibb was in clinical meetings with physicians all that day and had been commuting for over three hours.

21.     During the day, Davlin sent Gibb a text message about attending a Christian club in Nashville, but did not mention the email that had requested a

response that day.

22. Gibb did not receive the email until after the time that had been indicated for response.

23. Davlin emailed Gibb about Gibb having failed to respond to the email by the requested time; after which, Gibb responded by email via a "reply all" and advised Davlin that Gibb had been in clinics all day.

24. On March 27, 2024, Davlin, apparently offended by Gibb's response, and in conjunction with Mrs. Gyoerkoe, put Gibb on a performance improvement plan ("PIP") that required Gibb to respond to emails within 30 minutes, even on holidays, nights, and weekends.

25. The PIP was wholly unwarranted, as Gibb had been outperforming Davlin, herself, and Gibb was well-liked and respected by the physicians with whom she worked.

26. Gibb met with Leigh Medina ("Medina") in human resources to discuss the PIP, and expressed that she felt like Davlin and Mrs. Gyoerkoe were bullying her.

27. Through tears, Gibb advised Medina that Gibb had cognitive issues that led to executive dysfunction and made the requirements of the PIP a recipe for failure.

28. Medina advised Gibb that she could get an accommodation letter from her physician or go on leave pursuant to the Family and Medical Leave Act of 1993.

29. On or about April 3, 2024, Gibb communicated with her physician and requested a note clarifying the limitations of her handicap.

30.     On or about April 10, 2024, Gibb provided the note from her physician to Medina.

31.     After her request for an accommodation, on or about April 17, 2024, Gibb received an email from Davlin and Mrs. Gyoerkoe asserting that Gibb was "lying" about the amount of time it would take her to travel to a customer location in Asheville.

32.     Gibb forwarded the email to CEO Nick Curtis ("Curtis") and informed him of the treatment she was experiencing and Curtis was fully-aware of Gibb's handicap because of a personal connection they shared.

33.     Gibb advised Curtis that she had gone to human resources.

34.     Curtis responded to her via text message that he wanted things to work out and that he would follow-up on the PIP issue. (Exh. A.)

35.     The PIP had originally been for 90 days, but on April 22, 2024, as an "accommodation" it was reduced to 60 days, *i.e.* it was set to expire on May 22, 2024 instead of the original June date.

36.     Additionally, the "30 minute" response requirement was altered to allow Gibb until the next day to respond to an email, even if the email was received late in the evening, on a weekend, or on a holiday.

37.     Upon information and belief, no other individual was required to respond to emails within 30 minutes or even within a day; this included Davlin, who was in the same job classification and had the same job duties as Gibb.

38.	The PIP expired without further incident, and Gibb believed that any alleged performance issues were satisfactorily addressed.

39.	Upon information and belief, Mrs. Gyoerkoe was angry that Gibb had gone above her and that Curtis had authorized the reduction of the PIP timeframe.

40.	As a result, and upon information and belief, Mrs. Gyoerkoe encouraged her husband, Dean Gyoerkoe, who also worked for the Defendant, to decline to have meetings with Gibb.

41.	Having meetings with Gibb was part of Dean Gyoerkoe's job duties.

42.	Thus, on Friday, June 3, 2024, about two weeks after Gibb's PIP expired, Dean Gyoerkoe was put on his own PIP for failing to have meetings with Gibb.

43.	On Monday, June 6, 2024, Mrs. Gyoerkoe fired Gibb, allegedly for poor performance and "not traveling enough," even though Gibb had excellent sales results and traveled about three times as much as Davlin.

44.	Davlin remained employed.

45.	Gibb dual-filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") on or about June 6, 2024.  (Exh. B.)

46.	The EEOC issued its dismissal and Notice of Right to Sue letter on or about March 19, 2025.  (Exh. C.)

47.	Thus, Gibb has exhausted all required administrative prerequisites.  (*Id.*)

48. As a direct and proximate result of the Defendant's unlawful actions, Gibb has suffered emotional damages, mental anguish, and other psychological and physical symptoms.

49. For example, Gibb lost approximately ten pounds from the job-related stress imposed on her by Davlin and Mrs. Gyoerkoe, and, immediately following her termination, had to receive treatment for depression at an outpatient center.

50. Thus, Gibb's injuries were caused by the Defendant's actions, are on-going, and are reasonably likely to continue into the indefinite future.

51. In order to pursue and protect her legal rights, including those claims raised herein, Gibb has secured the services of undersigned counsel, to whom she is obligated to remit reasonable attorney's fees and costs.

### COUNT I (FCRA—HANDICAP DISCRIMINATION)

52. Gibb reaffirms and realleges paragraphs 1-51, above.

53. The Defendant is a "covered employer" within the meaning of the FCRA as it has had fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

54. Gibb was a "covered employee" within the meaning of the FCRA, who was employed by the Defendant.

55. Gibb is in a protected class by virtue of her handicap and/or her record of having a handicap.

56. Gibb was capable of performing the essential functions of her job, with or without a reasonable accommodation, as evidenced by the length of her tenure with

and re-hire by the Defendant, excellent performance history, and record of client satisfaction.

57. The decisionmakers with respect to Gibb's employment were aware of her handicap and took an adverse employment actions against her.

58. Specifically, Gibb only had the length of her PIP reduced after explaining the limitations of her handicap, instead of having the PIP cancelled entirely, and was thereafter terminated from her employment from the Defendant.

59. The brief timeframe within which these events took place, *e.g.* Gibb's providing details of her handicap to the Defendant in April 2024 and Gibb's termination in early-June 2024, show a causal connection between the two events.

60. Thus, there is a convincing mosaic of facts which support that Gibb's handicap is not wholly unrelated to the adverse employment actions she experienced.

61. This mosaic includes that Davlin was not as high-performing as Gibb, but was treated far more preferentially than Gibb.

62. As a direct and proximate result of the Defendant's violation of law, described herein, Gibb suffered financial harm in the form of lost wages and benefits, these damages are ongoing and reasonably likely to continue into the foreseeable future.

63. The Defendant's actions were willful and in reckless disregard for Gibb's legally protected rights under the FCRA, as evidenced by the tacit approval of the discriminatory behavior by the CEO and human resources staff, despite their direct knowledge of Gibb's handicap.

WHEREFORE, Gibb respectfully demands this Court enter judgment against the Defendant for the following:

a. Backpay, including, but not limited to, lost wages and benefits to the date of trial;

b. Front pay or reinstatement;

c. Compensatory damages for mental anguish, loss of the capacity to enjoy life, and other pain and suffering;

d. Punitive damages;

e. Nominal damages;

f. Interest on the amounts awarded, consistent with law;

g. Reasonable attorneys' fees and costs;

h. Entrance of an injunction prohibiting the Defendant from further violations of the Act; and

i. Any and all other relief permitted by law deemed just and proper by the Court.

### COUNT II (FCRA HANDICAP RETALIATION)

64. Gibb reaffirms and realleges paragraphs 1-51 and 53-57, above.

65. Gibb engaged in protected conduct via her objection to the terms of the PIP, which she felt was being used to set her up for termination due to her inability to meet the terms of the PIP as a result of her handicap.

66. Gibb was also treated differently when Dean Gyoerkoe failed to hold mandatory work meetings with her.

67. Gibb objected to his differential treatment of her, which she viewed as being a result of his having learned from his wife (Mrs. Gyoerkoe) that Gibb had a handicap and having the PIP reduced as a result.

68. Within days of Gibb's objection to Dean Gyoerkoe's treatment of her triggering his own PIP, Gibb was terminated in retaliation for having reported and objecting to his conduct.

69. Gibb was terminated less than three months of report to the Defendant's CEO learning that Gibb felt she was being treated differently/being discriminated against because of her handicap.

70. The close temporal proximity between her protected conduct and the adverse employment action of her termination show that the two events were not wholly unrelated.

71. As a direct and proximate result of the Defendant's violation of law, described herein, Gibb suffered financial harm in the form of lost wages and benefits, these damages are ongoing and reasonably likely to continue into the foreseeable future.

72. The Defendant's actions were willful and in reckless disregard for Gibb's legally protected rights under the FCRA, as evidenced by the tacit approval of the discriminatory behavior by the CEO and human resources staff, despite their direct knowledge of Gibb's handicap.

WHEREFORE, Gibb respectfully demands this Court enter judgment against the Defendant for the following:

a.  Backpay, including, but not limited to, lost wages and benefits to the date of trial;

b.  Front pay or reinstatement;

c.  Compensatory damages for mental anguish, loss of the capacity to enjoy life, and other pain and suffering;

d.  Punitive damages;

e.  Nominal damages;

f.  Interest on the amounts awarded, consistent with law;

g.  Reasonable attorneys' fees and costs;

h.  Entrance of an injunction prohibiting the Defendant from further violations of the Act; and

i.  Any and all other relief permitted by law deemed just and proper by the Court.

## COUNT III (RETALIATION UNDER THE ACT)

73.    Gibb reaffirms and realleges paragraphs 1-51 and 65-71, above.

74.    At all times relevant hereto, the Defendant was a private business that employed ten or more persons, and is therefore an "employer" within the meaning of the Act.  Fla. Stat. § 448.101(3).

75.    Gibb was employed by the Defendant for pay and is and/or was therefore an "employee" within the meaning of the Act.  Fla. Stat. § 448.101(2).

76.    By engaging in the retaliatory behavior described in paragraphs 1-51 and 65-71, supra, the Defendant also violated the Act.

77. As a direct and proximate result of the Defendant's violation of law, described herein, Gibb suffered financial harm in the form of lost wages and benefits, these damages are ongoing and reasonably likely to continue into the foreseeable future.

WHEREFORE, Gibb respectfully demands this Court enter judgment against the Defendant for the following:

a. Backpay, including, but not limited to, lost wages and benefits to the date of trial;

b. Front pay or reinstatement;

c. Nominal damages;

d. Compensatory damages for mental anguish, loss of the capacity to enjoy life, and other pain and suffering;

e. Reasonable attorneys' fees and costs;

f. Entrance of an injunction prohibiting the Defendant from further violations of the Act; and

g. Any and all other relief permitted by law deemed just and proper by the Court.

## **JURY TRIAL DEMAND**

The Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted this 8th day of January, 2026.

/s/ Shaina Thorpe
**SHAINA THORPE**
Florida Bar No. 0055464
Primary: shaina@thorpelaw.net
Secondary: admin@thorpelaw.net

**THORPELAW, P.A.**
100 S. Ashley Drive, Ste. 600
Tampa, Florida 33602
Telephone: (813) 400-0229
Fax: (813) 944-5223

*Lead Counsel for Plaintiff Whitney Gibb*

# EXHIBIT A



Nick >

Tuesday 9:02 AM

Hi Nick,

I don't know if my voicemail went through because it disconnected right in the middle of it!

I want you to know that I value my job at Lensar. I'm extremely passionate about my role in developing customers and motivated to help grow revenue for our company, always have been, and that's why even my own family had lensar. .

I've never felt the need to go to HR or especially my CEO in my 14 years in devices. But the way I'm being treated is not something I think you or lensar would stand for if you knew. I'm being talked to in a demeaning manner, my experience undermined, and set up for complete and utter failure in a hostile environment.

I love my job. I don't want to be forced out. I want to excel and produce results. I want to help educate patients and customers that there is no better choice than ally. And it's because I wholeheartedly believe that. And my history of producing results and long-term relationships for the company reflect that.

iMessage



Nick ›

history of producing results and long-term relationships for the company reflect that.

My current administrative work is taking about 90% of my work time and 70% of my personal time on top of that. I was hired to produce results for the company but it proves difficult with no metrics and extensive admin time. I'm being questioned and having to read allowed my text messages with customers to Cathy.

In my pip, there are four out of five scenarios that are not presented with all of the facts, that I do not agree with and are unfair.

Thank you for your attention to this. I respect you as a leader and the way that I've always been able to openly , communicate with you is something I appreciate. I apologize for putting this all in a text, but was hoping to catch you live to discuss.

Thank you Nick-

Whitney

(As a side note, I've been talking to Marina and helped her get into my long Covid and vaccine injury support group at Vandy. It's the world's first and we have one of the top leaders in the

iMessage



  

Nick

(As a side note, I've been talking to Marina and helped her get into my long Covid and vaccine injury support group at Vandy. It's the world's first and we have one of the top leaders in the world who advocates for us and whom I connected with Marina. Her first support group meeting is today and I genuinely hope that it helps her like it does for me. Thank you for connecting us).

Wednesday 8:01 PM

Hi Whitney
I am sorry that I haven't been available to talk. I am in middle of what is called a non-deal road show, board and investor matters besides the regular business duties

I am aware that there have been some performance concerns that are being addressed and that management and HR are involved and working to address it.

I understand that there are different perspectives and views on the subject I would ask that you provide the time to the appropriate parties- including both HR and management to follow protocol to address the performance as well as your concerns accordingly. In the event they are non responsive let me know and I can assure you

iMessage



Nick

In the event they are non responsive let me know and I can assure you proper follow up is made.
Nick

Hi Nick, I appreciate you getting back to me. I know you're busy and was trying not to reach out at all, and when I felt the need to I wanted to make sure it was after ASCRS.

I do trust HR to handle responsibly and fairly, so company and customer growth can be of focus instead.

On a lighter note, I was in Asheville Eye this week and 2/3 surgeons have already adjusted OR schedules to fit more cases in, which we should see hit may/june timeframe.

Training for the last of the 3 trained docs just completed in March . And guess what?! During my visit they mentioned getting another laser! In November a surgeon from Vance Thompson will join the practice which is when I believe that will be considered seriously.

I hope the meetings go well. Thank you for all you do

Whitney

iMessage

I do trust HR to handle responsibly and fairly, so company and customer growth can be of focus instead.

On a lighter note, I was in Asheville Eye this week and 2/3 surgeons have already adjusted OR schedules to fit more cases in, which we should see hit may/june timeframe.

Training for the last of the 3 trained docs just completed in March . And guess what?! During my visit they mentioned getting another laser🙌! In November a surgeon from Vance Thompson will join the practice which is when I believe that will be considered seriously.

I hope the meetings go well. Thank you for all you do

Whitney
Keep the faith - I want it to work out and I want to see you thrive
Appreciate your comments

We shall see about Asheville! That would be some turnaround story for them

Thank you. I appreciate you as a leader.

iMessage

# EXHIBIT B

EEOC Form 5 (11/09)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | **494-2025-00854** |

_____ and EEOC

*State or local Agency, if any*

| Name *(Indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Whitney Gibb | 6145065374 | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two are named, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| LENSAR | 50 plus | |

| Street Address | City, State and ZIP Code |
|---|---|
| 2800 Discovery Drive, Orlando, Florida 32826 | |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (*Check appropriate box(es).*)

☐ RACE  ☐ COLOR  ☐ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☐ OTHER (*Specify*)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest          Latest
                     6/3/2024

☐ CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

I was hired by Lensar originally in July 2016 through November 2019 as a Business Development Manager. In July 2023, I was rehired by Lensar as a Practice Education Specialist.

In March 2024, I communicated with my employer that, as a result of my disabling condition, I needed to request accommodations. In response, my employer provided me with information about how to request accommodations.

On March 27, 2024, I was placed on a 90 day Performance Improvement Plan.

On April 10, 2024, I submitted a formal request for accommodations to my employer, including medical documentation.

On April 16, 2024, my employer granted the accommodations in part.

On April 22, 2024, my performance improvement plan was revised for 30 days.

During this time, I repeatedly expressed to my employer that I did not believe my accommodations were being honored, and I was being asked to perform at a higher level than prior to my request for accommodations.

On June 3, 2024, I was terminated.

I believe my employer discriminated against me based on my disability and in retaliation for seeking accommodations.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State or Local Agency Requirements* |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 11/30/24          Whitney Gibb c/o Victoria Williamson<br>Date          *Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

EEOC Form 5 (11/09)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

Charge Presented To:

☐ FEPA

☐ EEOC

Agency(ies) Charge No(s):

_____ and EEOC

*State or local Agency, if any*

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

11/30/24    Whitney Gibb c/o Victoria Williamson

Date    *Charging Party Signature*

NOTARY – *When necessary for State or Local Agency Requirements*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*

EEOC MDO
Received 11/30/2024

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117**,** 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

EXHIBIT C



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Miami District Office**
100 SE 2nd St, Suite 1500
Miami, FL 33131
(800) 669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 03/19/2025

**To:** Whitney Gibb
3006 Forest Wander Way
NASHVILLE, TN 37206
Charge No: 494-2025-00854

EEOC Representative and email:    SERGIO MALDONADO
Investigator
Sergio.Maldonado@eeoc.gov

---

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 494-2025-00854.

On behalf of the Commission,

Digitally Signed By:Evangeline Hawthorne
03/19/2025
Evangeline Hawthorne
Director

**Cc:**
Zachary Sikora
Foley & Lardner LLP
321 N CLARK ST STE 3000
Chicago, IL 60654

Leigh Medina
LENSAR
2800 Discovery Dr
ORLANDO, FL 32826

Victoria Williamson Esq.
v.williamson@pandemiclegal.org


Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC
*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 494-2025-00854 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Evangeline Hawthorne, 100 SE 2nd St Suite 1500, Miami, FL 33131.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 494-2025-00854 to the District Director at Evangeline Hawthorne, 100 SE 2nd St Suite 1500, Miami, FL 33131.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

### NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**"Actual" disability or a "record of" a disability**

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- **Only one** major life activity need be substantially limited.

- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

Enclosure with EEOC Notice of Closure and Rights (01/22)

- ☐ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- ☐ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage**

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- ☐ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- ☐ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- ☐ A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.